UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eugene D. Patterson, Jr., | ) | C/A No. 5:14-04428-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| Michael McCall, Brian Durant, Bruce Oberman, | ) | |
| Ass. Warden James Dean, Mr. Elbert Pearson, and | ) | |
| Sgt. Long, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, a pro se prisoner, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment, filed on July 1, 2015. ECF No. 53. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on July 2, 2015, of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 54. On August 26, 2015, after receiving an extension, Plaintiff filed a Response in Opposition to Defendants' Motion, ECF No. 60, and on September 4, 2015, Defendants filed a Reply, ECF No. 61. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion for Summary Judgment is dispositive, a Report and Recommendation is entered for the court's review.

I.     Background

Plaintiff is an inmate in the South Carolina Department of Corrections ("SCDC"), and was housed at Lee Correctional Institution ("LCI") when the facts giving rise to his

Complaint occurred. ECF No. 1 at 1-2. Plaintiff filed his Complaint on November 18, 2014, and alleged causes of action for certain due process violations. *Id.* at 2. Specifically, Plaintiff maintains that on May 31, 2012, he was taken from his SMU[1] cell to appear before the Institutional Classification Committee ("ICC") regarding his security detention. *Id.* at 3. During his hearing, Plaintiff maintains that Sgt. Long ("Defendant Long") turned off the tape recorder and asked that Captain Commander have an officer retrieve all of his mail and any piece of paper from his cell. *Id.* Plaintiff alleges that he was placed in a holding cell while the ICC Board members searched his property. *Id.* After the search, Plaintiff represents that he returned to the conference room where he "observed a plastic trash bag (with [his] name written on it, containing [his] personal mail, legal mail, and a few pictures that were included in [his] personal mail) positioned by [Defendant] Long while he held some 'papers' in his hands." *Id.*

Plaintiff maintains that Defendant Long told him they had retrieved a "Kite" letter from his cell that was written by a "five-percenter." *Id.* Though Plaintiff alleges he was told that nothing linked him personally to being affiliated with the organization (that is allegedly a security threat group "STG"), it placed him in possession of STG material. *Id.* at 3-4. Plaintiff also alleges that Defendant Long informed Plaintiff that certain pieces of paper were believed "to be connected to the five-percenter organization (but in actuality clearly represents [his] love and connection to Christianity as [his] system of beliefs)." *Id.* at 4.

After the ICC Board considered whether to allow Plaintiff to return to general population, Plaintiff was informed that the Board recommended he remain on security detention for an additional two years. *Id.* At that point, Plaintiff maintains that Defendant Long informed Plaintiff that all of his belongings would be placed in the property room

---

[1] "SMU" is an abbreviation for Special Management Unit.

2

inside of his property bag and all his legal mail and legal materials would be returned to him. *Id.* However, Plaintiff alleges that he was only returned a few items of his legal mail. *Id.* Specifically, Plaintiff maintains that Captain Commander told him that Defendant Long took all his personal belongings contained in the plastic bag except for a few legal mail items which Defendant Long left with Captain Commander. *Id.* at 4-5.

Plaintiff alleges that on September 8, 2013, he submitted a "Request to Staff" to Defendant Pearson of the Special Investigation Unit ("SIU") concerning the "illegal confiscation," but Defendant Pearson has refused to respond to Plaintiff's inquiry. *Id.* at 5. Plaintiff maintains that he submitted a similar request to Defendant Long on June 2, 2014, and to Defendant Durant on June 4, 2014, and there has been no response. *Id.* Plaintiff indicates that Mr. Oberman informed him on the same day of the incident that he would ensure Plaintiff received his property back. *Id.* Plaintiff details the communications he has sent in his attempts to resolve the issue and have his property returned. *Id.* Finally, Plaintiff represents:

> Let it be noted that a part of the legal mail contained inside the plastic bag are a lot of letters from my trial counsel in criminal (sic) case, I need those letters ASAP because I'm presently awaiting an "evidentiary hearing" in my pending post-conviction relief case and I'm proceeding under "Ineffective Assistance of Counsel." A few of those letters I intend to utilize as exhibits.

*Id.*

Plaintiff requests that the court impose an "'injunction' and/or declaratory judgement (sic) against defendants, specifically that [his] property be returned to [him] and that Plaintiff be released into general population, as Plaintiff renounced former affiliations (to Folk Nation) as 'S.I.U.' investigator Mr. Pearson can attest." *Id.* at 6. Additionally, Plaintiff asks

3

that the court make defendants pay for his court filing fees, and he seeks $500.00 in punitive damages from each Defendant. *Id.*

On December 22, 2014, after an initial review of the case, the undersigned recommended that the district court partially dismiss the Complaint "insofar as it seeks relief for continued placement in the [LCI] SMU." ECF No. 11 at 5. Based on this recommendation, the undersigned instructed that Defendants "respond only to those portions of the Complaint that do not involve the SMU-placement issue." *Id.* Plaintiff filed no objections to the undersigned's Report and Recommendation ("R&R"), and on January 21, 2015, the District Court accepted the undersigned's R&R. ECF No. 17. There, the court ordered that Plaintiff's Complaint be partially dismissed "insofar as it seeks relief for continued placement in the Lee SMU and directed [Defendants] to respond only to those portions of the Complaint that do not involve the SMU-placement issue." *Id.* at 2. Defendants filed this Motion on Plaintiff's due process, access to court, and supervisory liability allegations. ECF No. 53.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).  "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

   III.    Analysis

Defendants filed a Summary Judgment Motion arguing that they are entitled to judgment as a matter of law as to all of Plaintiff's claims.  The undersigned will address each of Defendants' arguments in turn.

   A.    Defendant Robert Durant

Defendants request that "Defendant Robert Durant" be formally dismissed as a party to this action because "Plaintiff has conceded that Robert Durant is not a proper defendant in this case." ECF No. 53-1 at 3. As Defendants indicate, on May 13, 2015, the undersigned

5

granted Plaintiff's Motion to Amend his Complaint to change the then-named Defendant from "Robert Durant" to "Brian Durant." ECF No. 48. Based on the May 13, 2015 order, Defendant Robert Durant was dismissed as a party to this action. Further, as the current docket reflects, Defendant "Robert Durant" is no longer listed as a party. However, to the extent Defendants seek a formal dismissal, the undersigned recommends Defendant Robert Durant be dismissed as a party to this action.[2]

### B.     Administrative Exhaustion

Defendants maintain that "Plaintiff has failed to exhaust his administrative remedies and therefore, his Complaint should be dismissed." ECF No. 53-1 at 4. Defendants represent that Plaintiff has filed five grievances, and one was returned unprocessed. *Id.* at 6. Further, Defendants argue "[t]he remaining grievances were denied by the Inmate Grievance Board at the Step 2 level and Plaintiff was informed of the requirements to file an appeal to the Administrative Law Court." *Id.* Defendants assert that because Plaintiff failed to appeal any of the Step 2 grievances to the ALC that he failed to exhaust his administrative remedies. *Id.* The undersigned disagrees.

Pursuant to 42 U.S.C. Section 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

---

[2] In their second issue, Defendants argue that "all Defendants for whom there are no personal allegations should be dismissed." ECF No. 53-1 at 3. Specifically, Defendants maintain that "while Plaintiff generally alleges that these Defendants acted in connection with regard to the confiscation of his property, Plaintiff fails to sufficiently allege with any specificity exactly what actions or inactions for which these individuals should be held responsible or how such actions or inactions were violations of his constitutional rights. *Id.* at 3-4. More specifically, Defendants argue that Defendants McCall, Pearson, and Dean were not present during the STG meeting, and though Defendants Oberman and Long were present during the STG meeting "there are no allegations of actions or inactions which rise to the level of a violation of Plaintiff's Constitutional rights." *Id.* at 4. It is unnecessary to address this issue based on the undersigned's recommendations for the other issues addressed herein.

6

as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. See *Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.  Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). SCDC inmates are required to file Step 1 Grievance forms and Step 2 Grievance forms prior to initiating civil actions. *See Wagner v. United States*, 486 F. Supp. 2d 549, 558 (D.S.C. 2007); *Greene v. Stonebreaker*, No. 906-3392-PMD, 2007 WL

7

2288123, at *5 (D.S.C. Aug. 6, 2007) ("It appears to the court that the SCDC's exercise of true agency expertise ends when it issues a final response through its answer to an inmate's Step Two grievance.").

This court has held that in this type of § 1983 action, it is an inmate's obligation to file only Step One and Step Two grievances in order to exhaust his administrative remedies.[3] Thus, the court is not persuaded by the Defendants' argument that the Plaintiff failed to exhaust his administrative remedies, and cannot recommend that Defendants be granted summary judgment on this ground.

### C.     Due Process Violation-Loss of Property

Defendants maintain that "any claim construed by this court to be a claim associated with the alleged deprivation or loss of property should fail and be dismissed." ECF No. 53-1 at 10. Further, Defendants argue that "deprivations of property, including negligent and unauthorized intentional deprivations of personal property, do not support an action for damages under 42 U.S.C. § 1983." *Id.* Specifically, Defendants maintain that Plaintiff's cause of action for negligent deprivation of property against Defendants McCall, Pearson, Dean, Oberman, and Long should fail. *Id.* Further, Defendants assert that because Plaintiff has an available post-deprivation remedy, his deprivation claim should fail. *Id.* Moreover, Defendants argue that all of Plaintiff's legal material has been returned to him since the STG renunciation hearing. *Id.* at 11.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "In order to

---

[3] *But see Maradiaga v. Bethea*, No. 4:08-0226-PMD, 2009 WL 2829900, at *4 (D.S.C. Sept. 1, 2009) (finding that when "challenging a disciplinary conviction that results in a loss of sentence-related credits, an inmate must first appeal the denial of his Step 2 grievance to the South Carolina Administrative Court.").

8

prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Here, Plaintiff is alleging his due process rights were violated when his property was confiscated and not returned. In *Parratt v. Taylor,* 451 U.S. 527 (1981), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment is not violated when a state employee *negligently* deprives an inmate of property, provided that the state makes available a meaningful postdeprivation remedy. Extending *Parratt,* the Court in *Hudson v. Palmer,* 468 U.S. 517 (1984) held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Id.* at 533. A due process claim does not arise unless or until the state fails or refuses to provide a suitable postdeprivation remedy. *Id.* Therefore, if a state provides a meaningful postdeprivation remedy, an allegation of a due process violation cannot survive whether the conduct is negligent or intentional.

In the present case, SCDC's Inmate Grievance Procedure is available to address inmate claims for deprivation of property. This procedure has been specifically determined by the South Carolina Supreme Court to comply with the due process standards delineated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Al–Shabazz v. State*, 527 S.E.2d 742, 752 (S.C. 2000). The Inmate Grievance Procedure, therefore, provides an adequate postdeprivation remedy. *Cf. Hudson,* 468 U.S. at 536 n.15 (noting that the state's newly implemented tort claims act and inmate grievance procedure, neither of which had been available to the respondent, were potential sources of relief for inmates in the future

who found themselves in the position of having had property taken). Further, the Fourth Circuit has held that a district court should deny relief under section 1983 if state law provides a viable remedy for personal property loss, even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of the state. *Yates v. Jamison,* 782 F.2d 1182, 1183-84 (4th Cir. 1986).

In support of their argument, Defendants attached the affidavit of Thomas Commander. *See* ECF No. 53-3. Captain Commander attests that he was personally present for the May 31, 2012 STG Review Hearing, and he was the Captain in charge of the SMU where Plaintiff was being housed. *Id.* ¶ 2. Captain Commander represents that the hearing happened at Plaintiff's request because Plaintiff "requested a review of his STG status." *Id.* ¶ 3. Furthermore, Captain Commander attests:

> The purpose of the hearing is to determine if Plaintiff still has any affiliation with any STG as he [was] claiming he wish[ed] to renounce[] his rights and affiliation with a certain STG. In making the determination if Plaintiff's had no further affiliation, a review of his property contained in his cell is conducted. In Plaintiff's case, the material contained in Plaintiff's property box was removed and because he was found to be in possession of STG material and contraband he was recommended to remain on STG status.

*Id.* ¶ 4. According to his affidavit, items considered to be contraband were confiscated, while "[a]ny items that were not considered contraband were returned to Plaintiff to the extent it was within the permissible number of personal items allowed for security reasons." *Id.* ¶ 5. Furthermore, Captain Commander avers that "an inventory of the property in [Plaintiff's] cell which was conducted several months following the hearing showed [Plaintiff] was in possession of his legal material, his bible, and the amount of personal letters permitted to be in his possession." *Id.* ¶ 7.

In his Complaint and Response, Plaintiff repeatedly represents that all of his legal materials have not been returned to him. ECF Nos. 1, 60. Further, Plaintiff indicates that Defendants' argument concerning the property inventory is futile. *Id.* at 5. However, whether Plaintiff is satisfied with the available post-deprivation remedy is a non-issue. Several courts have held that the mere existence of the SCDC grievance process is enough due process for inmates in a deprivation of property action. *See e.g.*, *Kershaw v. Padula*, No. 6:10-951-MBS, 2011 WL 1750222, at *4 (D.S.C. Apr. 6, 2011) *report and recommendation adopted*, No. 6:10-0951-MBS, 2011 WL 1700009 (D.S.C. May 4, 2011); *Greene v. Stonebreaker*, No. 906-3392-PMD, 2007 WL 2288123, at *7 (D.S.C. Aug. 6, 2007). Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment concerning Plaintiff's due process cause of action because of the availability of the SCDC grievance process and pursuant to the holdings in *Parrott* and *Hudson*.

  D.   Access to Courts

Defendants argue that "to the extent Plaintiff is claiming that he was denied access to courts, Plaintiff's claim should fail as he fails to show any relevant actual injury." ECF No. 53-1 at 11. Defendants acknowledge that Plaintiff alleges his legal material was taken, and he "was awaiting a hearing on that matter." *Id.* However, Defendants argue that Plaintiff has not claimed any actual injury, and therefore his claim must fail. *Id.*

Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the Due Process Clause, or any other statute. *See Daye v. Rubenstein,* 417 F. App'x. 317, 319 (4th Cir. 2011) ("[P]risoners do not have a constitutional right of access to the grievance process."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (finding "the Constitution creates no entitlement to grievance procedures or access to any

such procedure voluntarily established by a state."); *Patel v. Moron*, 897 F. Supp. 2d 389, 402 (E.D.N.C. 2012) (finding no right to a grievance procedure in a *Bivens* context). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system.

With regards to Plaintiff's allegations of denial of access to courts concerning his legal claims, the undersigned finds that Plaintiff has failed to make a prima facie case. The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must demonstrate with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55. The *Lewis* Court reasoned that the requirement that an inmate "show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349.

Here, Plaintiff has alleged only that he has an upcoming post-conviction relief ("PCR") hearing and wishes to use certain letters from his trial counsel as exhibits in his ineffective-assistance-of-counsel claim. Plaintiff does not state with specificity which letters are missing from his legal materials and whether his trial or PCR attorney can furnish him with what he claims is missing. Further, Plaintiff's trial attorney will likely testify at

Plaintiff's PCR hearing and can provide testimony concerning the actions he took or failed to take on Plaintiff's behalf during the representation. As it stands, Plaintiff has failed to demonstrate, as required by *Lewis*, 518 U.S. at 353–55, that he suffered an actual injury concerning his deprivation of property claim or his alleged denial of access to court cause of action. Therefore, the undersigned recommends that the Defendants' Motion for Summary Judgment be granted, and Plaintiff's access to courts cause of action be dismissed.

> E.  Respondeat Superior/Supervisory Liability (Arguments VII and VIII)

Defendants maintain that "the doctrine of respondeat superior is no applicable in a case brought under 42 U.S.C. § 1983 and any causes of action construed to be brought under this theory against any Defendant must be dismissed." ECF No. 53-1 at 12. Additionally, Defendants maintain that "Plaintiff makes no viable claim that any Defendant was constitutionally deficient in his supervisory duties." *Id.* at 13. Plaintiff does not appear to allege a cause of action for supervisory liability in his Complaint, ECF No. 1, and Plaintiff does not specifically address Defendants' Arguments seven and eight in his Response, ECF No. 60.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (citation omitted). To successfully pursue such a theory, Plaintiff would have to demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's

corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id., see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).

The undersigned finds that Plaintiff has failed to allege a cause of action for supervisory liability in this action. However, to the extent the district court disagrees, the undersigned recommends granting Defendants' Motion for Summary Judgment because Plaintiff has failed to establish evidence of a causal link between any action taken by the SCDC staff and supervisors. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability as to his due process claim, the undersigned recommends that summary judgment be granted to Defendants as to this claim.

### F.    "Official Capacity" Claims

Defendants argue "Plaintiff may not seek damages under 42 U.S.C. § 1983 against the State or against a state official, acting in her official capacity." ECF No. 53 at 16.

Should the court not adopt the undersigned's recommendation concerning Plaintiff's due process and access-to-court claims, the undersigned recommends dismissing Plaintiff's claims against Defendants in their official capacities. In a § 1983 action, a plaintiff cannot sue a State official, while acting in his or her official capacity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 71 (1989). Such suits are barred by the Eleventh Amendment. *Id.* Accordingly, the undersigned recommends dismissing Plaintiff's causes of action against Defendants in their official capacities.

### G.    Perceived State Law Claims

Defendants argue that "as all federal claims have been demonstrated to be without merit, any perceived state claims in the Complaint should be dismissed under the discretion of the court." ECF No. 53-1 at 17. The undersigned agrees.

Upon review of Plaintiff's Complaint, it does not appear to the undersigned that Plaintiff has raised any particular South Carolina state law claim. However, to the extent the district court disagrees, the undersigned recommends the court decline to exercise supplemental jurisdiction over any perceived claims. If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining causes of action—to the extent any exist—would be based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Addison v. Chesterfield Cty. Sheriff Dep't*, No. 4:12-CV-02543-RBH, 2013 WL 6799223, at *3 (D.S.C. Dec. 20, 2013) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to § 1983 claim); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (same in Title VII matter).

Here, the undersigned recommends the court decline to exercise supplemental jurisdiction over any perceived state-law claims and dismiss those claims without prejudice to them being filed in state court, thus ending this action as to Defendants.

### H.    Injunctive Relief

Defendants argue that "any injunctive relief sought . . . should be denied and summary judgment should be awarded to these Defendants." ECF No. 53-1 at 18. Based on the above recommendations, any claim for injunctive relief is moot because the undersigned has recommended that all of Plaintiff's causes of action be dismissed for failure to state a valid § 1983 claim.

### I.   Request for a Strike

Defendants argue that "Plaintiff's claims are factually and legally frivolous, should be dismissed, and should count as a strike pursuant to the Prison Litigation Reform Act." ECF No. 53-1 at 18-19. The undersigned does not find Plaintiff's Complaint to have been filed frivolously. Therefore, the undersigned recommends that the district court deny Defendants' request to consider this action as a strike pursuant to 28 U.S.C. § 1915(g).

### J.   Brian Durant

Defendants argue that they are "unaware of the existence of a person named Brian Durant and [Dedendants' attorney] does not represent Brian Durant at this time." ECF No. 53-1 at 19. Should the district court accept the above recommendations, this case will be dismissed against all named Defendants. Therefore, it is unnecessary for the court to address whether Defendant Brian Durant is a correct party to this action, whether he exists, or whether he was properly served by Plaintiff.

### K.   Qualified Immunity

Defendants assert that they "are entitled to qualified immunity from any monetary relief claims brought against them in their individual capacities." ECF No. 53-1 at 6-10. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that

government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

    IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 53, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

January 19, 2016  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**